1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LINKS: 9, 11**

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

DISH NETWORK L.L.C. et al.,

          Plaintiffs,

          v.

JAMES TERRAZAS,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No. CV 11–07376 GAF (SSx)**

**MEMORANDUM & ORDER REGARDING MOTION FOR DEFAULT JUDGMENT**

## I. INTRODUCTION

Plaintiffs DISH Network, LLC ("DISH Network"), EchoStar Technologies, LLC ("EchoStar"), and NagraStar, LLC ("NagraStar") (collectively, "Plaintiffs") bring this action against Defendant James Terrazas ("Defendant"), alleging that Terrazas used a pirating service to illegally intercept and decrypt DISH Network's satellite signals and view copyrighted satellite television programing without authorization. Plaintiffs assert violations of 17 U.S.C. § 1201(a) of the Millennium Copyright Act (circumventing an access control measure), 47 U.S.C. § 605(a) of the Communications Act (receiving satellite signals without authorization), and 18 U.S.C. §§ 2511(1)(a) and 2520 of the Electronic Communications Privacy Act ("ECPA"), also commonly known as the Wiretap Act (intercepting satellite signals). (Docket Nos. 9, 11, Mem. and Supp. Mem.;

Docket No. 1, Compl. ¶¶ 29, 34, 38.)  Plaintiffs now move for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2), seeking a judgment (1) finding that Defendant violated the ECPA; (2) granting a statutory damage award in the amount of $10,000; (3) entering a permanent injunction; and (4) awarding attorney's fees in the amount of $1,200.  (Not.; Mem. at 10; Supp. Mem. at 4–7; Docket No. 9-5, Proposed Order.)

After examining Plaintiffs' relevant filings, the Court concludes that Plaintiffs are entitled to default judgment because they have satisfied all of the relevant procedural requirements, have pleaded sufficient facts in their complaint to justify entry of default judgment, seek a remedy that the Court deems proper, and have shown that they are entitled to relief.  Accordingly, Plaintiffs' motion for default judgment is **GRANTED**.  The Court explains its reasoning in greater detail below.

## II.  BACKGROUND

On a motion for default judgment, a court must take as true all factual allegations in the complaint except for those pertaining to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).  Along with the complaint, the court may look to affidavits and declarations to determine whether default judgment is appropriate.  See William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial § 6:91, at 6-22 (2000).  The following are the facts as set forth in Plaintiffs' complaint, as well as the declarations and exhibits accompanying Plaintiffs' motion for default judgment.

Plaintiff DISH Network, a Colorado limited liability company, is a multi-channel video provider that delivers video, audio, and data services via encrypted direct broadcast signals from a geosynchronous satellite system to more than 14 million paying subscribers.  (Compl.¶¶ 9–10, 13; Docket No. 9-2, Declaration of Gregory Duval ("Duval Decl.") ¶¶ 4–7.)  NargraStar, a Colorado limited liability company, is a supplier of smart cards and other proprietary security technologies that form a conditional access system that prevent unauthorized access to DISH Network's satellite

broadcasts.  (Compl. ¶¶ 6, 15–17; Duval Decl. ¶¶ 8–9.)  EchoStar, a Texas limited liability company, provides receivers, satellite dish antenna, and other digital equipment necessary for satellite television systems.  (Compl. ¶¶ 5, 14, 17–18; Duval Decl. ¶ 8.) Together, Plaintiffs provide a secure satellite televison platform where viewers can pay to view copyrighted broadcast service.

Defendant James Terrazas was a subscriber of the "Dark Angel" service, which was designed to help subscribers gain unauthorized access to DISH Network's satellite broadcasts.  (Compl. ¶ 24; Docket No. 9-3, Declaration of Steven Rogers ("Rogers Decl.") ¶ 4(a).)  Through this service Defendant obtained and used a pirate satellite receiver containing software that allowed him to circumvent the technological measures DISH Network used to protect access to its copyright protected broadcasts.  (Compl. ¶ 26.)  Defendant's use of the Dark Angel system gave him unlimited access to DISH Network programming, including premium and pay-per-view channels.  (Id. ¶ 27.) Defendant used this system on at least 14 separate occasions, using the subscriber names "tina" and "tina1."  (Rogers Decl. ¶ 4(e), Ex. 6 [Subscriber Name Printout].)

Plaintiffs invest millions of dollars each year in security measures that protect DISH Network programing from piracy.  (Duval Decl. ¶ 16.)  Integral to DISH Network's security measures is the use of a smart card that contains a secure embedded microprocessor acting as a security computer.  (Compl. ¶¶ 15, 17.)  The smart card runs a conditional access system that allows DISH Network to restrict access to only the programing that a subscriber has paid for, and protects the control words that are required to decrypt and unscramble the broadcast.  (Compl. ¶¶ 15–17.)  The Dark Angel service maintained valid subscriptions to DISH Network, allowing it to harvest these control words or decryption codes and thereby disseminate them to its subscribers over the Internet.  (Compl. ¶ 21; Duval Decl. ¶ 14.)  By intercepting the decryption codes that DISH Network sent to valid receivers possessed by Dark Angel, and then placing these codes on a server it maintained, Dark Angel subscribers could piggyback on the service's codes through a subscription to Dark Angel, rather than DISH Network.

(Duval Decl. ¶ 11–15.)  Defendant maintained such a subscription and connected his pirated receiver to the Dark Angel servers such that he could receive updated decryption codes every time he wanted to intercept and decrypt DISH Network programing. (Compl. ¶ 8, 23–26; Duval Decl. ¶¶ 11–15.)

Plaintiffs filed their complaint on September 7, 2011.  Plaintiffs filed a request for entry of default on November 21.  (Docket No. 6.)  The Court Clerk entered default against Defendant on November 28, for failure to respond or otherwise defend against the action.  (Docket No. 7–8.)  On December 12, Plaintiffs filed the present motion for default judgment.  (Docket No. 9.)  The Court requested supplemental briefing on the Eitel factors on January 17, 2012, (Docket No. 10), and Plaintiffs submitted their supplemental briefing on January 30, 2012 (Docket No. 11).

## III.  DISCUSSION

### A.  PROCEDURAL REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b) of the Federal Rules of Civil Procedure permits a court-ordered default judgment following the entry of default by the Court Clerk under Rule 55(a). Elektra Entm't Grp., Inc. v. Bryant, No. 03-6381 GAF (JTLx), 2004 WL 783123, at *1 (C.D. Cal. Feb. 13, 2004) (citing Kloepping v. Fireman's Fund, No. C 94-2684 THE, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996)).  Local Rule 55-1 requires that motions for default judgment set forth the following information: (1) when and against what party default was entered; (2) identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Servicemembers Civil Relief Act,[1] 50 App. U.S.C. § 521, does not apply; and (5) that notice of the motion has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2). C.D. Cal. R. 55-1.

---

[1] The Servicemembers Civil Relief Act was formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940.

Here, Plaintiffs have satisfied all applicable procedural requirements.  Plaintiffs' memorandum of points and authorities indicate that the Court Clerk entered default against Defendant on November 28, 2011.  (Mem. at 1; <u>see</u> <u>also</u> Docket No. 7–8.)  The default was entered as to the complaint.  (Docket No. 9, Not.; Mem. at 6.)  Plaintiffs have also established that Defendant is not an infant, incompetent person, or subject to the Servicemembers Civil Relief Act.  (Docket No. 9-1, Declaration of Timothy M. Frank ("Frank Decl.") ¶¶ 3–4, Exs. 1 & 2.)  Finally, Plaintiffs have served a notice of the motion and all filings on Defendant by mail to Defendant's home address.  (Proof of Service.)  Because the procedural requirements for entry of a default judgment are met, the Court proceeds to weigh the merits of Plaintiffs' motion.

## B. Factors Used to Determine Whether to Grant Default Judgments

A district court has discretion to grant or deny a motion for default judgment. <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980).  Thus, a defendant's default alone does not entitle a plaintiff to a court-ordered judgment.  The Ninth Circuit has held that a district court must examine the following factors when determining whether to enter a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

<u>Eitel v. McCool</u>, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (citation omitted).  "In applying this discretionary standard, default judgments are more often granted than denied."  <u>PepsiCo, Inc. v. Triunfo-Mex, Inc.</u>, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

On a motion for default judgment, a court must presume the truth of all factual allegations in the complaint except for those pertaining to the amount of damages. <u>TeleVideo Sys., Inc. v. Heidenthal</u>, 826 F.2d 915, 917–18 (9th Cir. 1987).  Along with

1
2
3

the complaint, the court may look to affidavits and declarations to determine whether default judgment is appropriate.  See William W. Schwarzer et al., California Practice Guide: Federal Civil Procedure Before Trial § 6:91 (2010).

4

**1. POSSIBILITY OF PREJUDICE TO PLAINTIFFS**

5
6
7
8
9
10
11
12
13
14
15
16
17

To satisfy the first Eitel factor, Plaintiffs must show that they will face prejudice if the Court does not enter default judgment.  Eitel, 782 F.2d at 1471–72.  The Court borrows the standard of prejudice employed by courts when evaluating motions to set aside entry of default judgment—namely, whether a plaintiff's ability to pursue its claim will be hindered if the application for default judgment is not granted.  See TCI Group Life Ins. Plan v. Knoebber, 244 F.3d 691, 701 (9th Cir. 2001).  In other words, the plaintiffs must show more than mere delay resulting from a denial of their application; it must establish that they will suffer "tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion" if the application is denied.  Thompson v. Am. Home Assur. Co., 95 F.3d 429, 433–34 (6th Cir. 1996).  Additionally, courts have held that prejudice is shown where a plaintiff has no "other recourse for recovery" against the defendant.  PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).

18
19
20
21
22
23
24
25
26
27

The Court concludes that Plaintiffs would suffer significant prejudice if the Court were to deny its motion.  Defendant has not answered or otherwise responded to the complaint and has made no indication that he intends to defend this action. Notably, Plaintiffs will be left without other recourse for recovery.  See id.  If default judgment were not entered, Plaintiffs would have no way to prevent unauthorized interception of their satellite television broadcasts or prevent future monetary damage and ancillary harm arising from such interceptions.  Defendant would effectively be permitted to continue intercepting Plaintiffs' satellite programing without liability or consequence. Because Plaintiffs would suffer substantial prejudice if default judgment were not entered, the first Eitel factor weighs in favor of granting default judgment.

28

**2.  SUBSTANTIVE MERITS AND SUFFICIENCY OF THE COMPLAINT**

The second and third <u>Eitel</u> factors have been interpreted by courts to require a plaintiff to state a claim upon which he or she may recover.  <u>Id.</u> at 1175.  This means simply that the Court must examine the complaint to determine whether Plaintiffs have adequately pleaded their claims.

Section 2511(1)(a) provides that "any person who . . . intentionally intercepts, endeavors to intercept, or procures any person to intercept or endeavor to intercept, any wire, oral, or electronic communication" violates federal law.  18 U.S.C. § 2511(1)(a); <u>see</u> <u>DirecTV, Inc. v. Huynh</u>, No. 04-3496, 2005 WL 5864467 at *6–8 (N.D. Cal. May 31, 2005).  While § 2511 is a criminal statute, § 2520 provides that any person whose "electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a <u>civil action</u> recover from the person . . . which engaged in that violation such relief as may be appropriate."  18 U.S.C. § 2520(a) (emphasis added).  For purposes of an EPCA violation, 'electronic communication' includes a 'satellite television signal.'  <u>See</u> <u>United States v. Lande</u>, 968 F.2d 907, 909 (9th Cir. 1992).

The acts alleged in the complaint fall within the scope of §§ 2511(1)(a) and 2520(a).  The complaint alleges that Defendant purchased a three-month membership to the Dark Angel service, a service that exclusively helps its members gain unauthorized access to DISH Network's satellite broadcasts.  (Compl. ¶¶ 8, 24.)  Plaintiffs allege that Defendant then used a pirated receiver in conjunction with the decryption codes that the Dark Angel service provided to decrypt and access DISH Network broadcasts.  (<u>Id.</u> ¶¶ 22, 26.)

In addition to the allegations contained in the complaint, Plaintiffs submit evidentiary proof in the form of several declarations attached to their moving papers, (<u>see</u> Docket No. 9), including the declaration of Steven Rogers, a forensics analyst, who personally seized and analyzed Dark Angel's computer systems.  (Rogers Decl. ¶¶ 3–4.)  Rogers recovered five documents evidencing Defendant's use of the Dark Angel system to intercept and decrypt DISH Network's programing:

7

> (1) a payment receipt for Defendant's purchase of a three month subscription starting on July 1, 2010;
>
> (2) an internal email confirming Defendant's purchase and identifying his username as "jamesterrazas";
>
> (3) an email from Defendant stating that he was waiting for his access codes;
>
> (4) a printout associating the "jamesterrazas" username with subscriber names "tina" and "tina1";
>
> (5) a printout showing Defendant's use of the subscriber names "tina" and "tina1" when obtaining decryption codes to view DISH Network programing on at least 14 separate occasions.

(Id. ¶ 4(a)–(e), Exs. 2–6.)  The declaration of Gregory Duval reiterates that the Dark Angel service had no legitimate uses other than piracy and that people connecting to its servers were receiving the decryption codes to decrypt and view DISH Network programing.  (Duval. Decl. ¶¶ 13–15.)

Plaintiffs have demonstrated that their claim is sufficiently alleged in their complaint.  Accordingly, the second and third <u>Eitel</u> factors weigh in favor of granting default judgment.

**3. AMOUNT AT STAKE**

The fourth <u>Eitel</u> factor requires the court to consider the amount of money at stake.  <u>Eitel</u>, 782 F.2d at 1471–72.  The Court must evaluate the amount at stake because default judgments are disfavored where the amount at stake "is too large or unreasonable in light of [the] defendant's actions."  <u>Truong Giang Corp. v. Twinstar Tea Corp.</u>, No. 06-03594, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).

In its motion for default judgment, Plaintiffs withdrew the demand for damages under 17 U.S.C. § 1201(a) and 47 U.S.C. § 605(a).  (<u>See</u> Not; Supp. Mem. at 6; Compl. at 8–9.)  Thus, Plaintiffs now seek only a statutory damage award of $10,000 pursuant to 18 U.S.C. § 2520(c)(2), attorney's fees of $1,200 pursuant to 18 U.S.C. § 2520(b)(3), and a permanent injunction.  (Not.; Supp. Mem. at 6 & n.3; Proposed Order.)

1    Although the requested amount is substantial, this amount has been provided for

2    by the statute Defendant is alleged to have violated.  Indeed,  $10,000 is considered the

3    minimum amount of damages a district court can award if, in its discretion, it chooses to

4    award damages.  See Huynh, 2005 WL 5864467 at *8.  Thus, the amount sought

5    constitutes nothing more than that to which Plaintiffs are entitled under the statute.

6    Accordingly, the fourth Eitel factor weighs in favor of granting default judgment.

7        **4.  POSSIBILITY OF DISPUTE**

8        The fifth Eitel factor requires the Court to consider the possibility of disputes

9    regarding material facts in the case.  Eitel, 782 F.2d at 1471–72.  As explained above,

10   upon entry of default, a court must presume the truth of all well-pleaded facts in the

11   complaint except those relating to damages.  TeleVideo, 826 F.2d at 917–18.

12       Here, Plaintiffs' complaint, which the Court takes as true, alleges sufficient facts

13   to establish Plaintiffs' claim for relief.  By failing to respond, Defendant has failed to

14   rebut the presumption that Plaintiffs' allegations are true.  Thus, no genuine dispute

15   exists, or is likely to exist, regarding the material facts at issue in this case.  This Eitel

16   factor therefore favors entering default judgment.

17       **5.  POSSIBILITY OF EXCUSABLE NEGLECT**

18       In considering the sixth Eitel factor, the Court must account for the possibility

19   that Defendant's default resulted from excusable neglect.  Due process requires that all

20   interested parties be given notice reasonably calculated to apprise them of the pendency

21   of the action, and that they be afforded an opportunity to present their objections before a

22   final judgment is rendered.  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306,

23   314 (1950).

24       Plaintiffs served Defendant with a copy of the summons and complaint by

25   personal service at Defendant's home address, on October 8, 2011.  (Docket No. 5, Proof

26   of Service.)  A copy of the Clerk's entry of default was mailed to Terrazas on December

27   1, 2011, at the same address at which he was personally served with the summons and

28   complaint.  (Frank Decl. ¶ 2.)  Plaintiffs also served their notice of motion and motion of

1   entry of default judgment by mailing a copy of the motion and all moving papers and
2   attached exhibits to the same address where he was personally served with the summons
3   and complaint.  (Proof of Service.)

4       Defendant has had ample time to resolve this matter by filing motions or
5   interposing an answer, but has done nothing.  The Court thus concludes that Defendant's
6   default was the result of an affirmative decision not to litigate the action rather than
7   excusable neglect.  The sixth Eitel factor favors entering default judgment.

8   ### 6. POLICY FAVORING DECISIONS ON THE MERITS

9       The seventh Eitel factor requires the Court to account for the policy favoring
10  decisions on the merits.  Eitel, 782 F.2d at 1471–72.  The very existence of Rule 55(b),
11  however, indicates that "this preference, standing alone, is not dispositive."  PepsiCo,
12  238 F. Supp. 2d at 1177 (internal quotation marks omitted) (quoting Kloepping, 1996
13  WL 75314, at *3).  Rule 55(a) permits a district court to render a judgment before
14  adjudicating the merits of the case where the defendant fails to defend against the action.
15  Fed. R. Civ. P. 55(a); see also Schwarzer, supra, § 6:102, at 6-26.

16      Here, Defendant's failure to answer the complaint or otherwise respond in this
17  matter renders the Court unable to adjudicate the case on the merits.  Accordingly, the
18  policy of deciding cases on the merits does not preclude the Court from entering default
19  judgment.

20  ### 7. CONCLUSION RE: EITEL FACTORS

21      After analyzing each Eitel factor, the Court concludes that, on balance, the
22  factors weigh in favor of entering default judgment against Defendant.  Accordingly,
23  Plaintiffs' motion for entry of default judgment is **GRANTED**.

24  ## C. REMEDIES

25      The Court proceeds to assess whether Plaintiffs are entitled to the remedies they
26  seek.  Under Federal Rule of Civil Procedure 54(c), remedies granted in a default
27  judgment "must not differ in kind from, or exceed in amount, what is demanded in the
28  pleadings."  Fed. R. Civ. P. 54(c).  Under Federal Rule of Civil Procedure 8(a)(3), a

plaintiff's demand for relief must be specific.  Fed. R. Civ. P. 8(a)(3); see also  Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 923 (C.D. Cal. 2010).  In addition, a plaintiff must "prove up" the amount of damages claimed.  Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 501 (C.D. Cal. 2003).  These rules limit the scope of relief and ensure fundamental fairness as required by due process of law.  Schwarzer, supra, § 6:131, at 6-33.

Here, Plaintiffs request a statutory damage award of $10,000 pursuant to 18 U.S.C. § 2520(c)(2), reasonable attorney's fees of $1,200 pursuant to 18 U.S.C. § 2520(b)(3), and a permanent injunction.  (Not.; Supp. Mem. at 6 & n.3.)  The relief requested is sufficiently specific, and does not differ in kind from the relief prayed for in Plaintiffs' complaint, in compliance with Rules 8(a)(3) and 54(c).  (See Compl. at 8–9.)

## 1. PERMANENT INJUNCTION

Plaintiffs seek a permanent injunction under 18 U.S.C. § 2520(b)(1).  (Mem. at 6; Supp. Mem. at 6 n.3.)  The ECPA expressly permits district courts to render "such preliminary and other equitable or declaratory relief as appropriate."  18 U.S.C. § 2520(b)(1).  To obtain permanent injunctive relief, a plaintiff must prove that (1) it has suffered irreparable injury; (2) remedies at law are inadequate; (3) the balance of hardships favors granting injunctive relief; and (4) the public interest would not be disserved by a permanent injunction.  eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).  Based on the allegations in Plaintiffs' complaint, the Court concludes that all four requirements are satisfied and that Plaintiffs are entitled to injunctive relief.

Loss of goodwill, loss of ability to control business reputation and lost profits each constitute irreparable harm.  See Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 994 F.2d 597, 603 (9th Cir. 1991).  Here, Defendant's piracy activity is depriving DISH Network of subscription fees and undermining its ability to deliver secured content.  (Compl. ¶ 8; Duval Decl. ¶¶ 16–18.)  Second, DISH Network has no adequate remedy at law.  Courts have found that while damages can help mitigate the costs of piracy, they "are inadequate to prevent future piracy without injunctive

11

relief." DISH Network L.L.C. v. DelVecchio, No. 11-CV-06297-CJS, 2011 WL 4747848, at *6 (W.D.N.Y. October 7, 2011). Therefore, the Court finds Plaintiffs' remedies at law to be inadequate. See DIRECTV, Inc. v. Anderson, No. 03-688-HO, 2005 WL 2104590, at *1 (D. Or. 2005). Third, the balance of hardships weighs in Plaintiffs' favor. Plaintiffs have spent substantial sums of money fighting piracy, and their reputation, goodwill and bottom line are dependent upon the delivery of secured content. (Duval Decl. ¶¶ 16–18.) Defendant, on the other hand, would only be enjoined from engaging in illegal conduct, which does not qualify as a legitimate hardship. The relative hardships thus favor injunctive relief. Fourth, the issuance of an injunction does not offend public policy. Accordingly, Plaintiffs are entitled to a permanent injunction.

The Court must next determine the appropriate scope of the injunctive relief. Federal Rule of Civil Procedure 65 requires that "[e]very order granting an injunction and every restraining order must: (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). "[A]n injunction must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiff[], rather than to enjoin all possible breaches of the law." Price v. City of Stockton, 390 F.3d 1105, 1117 (9th Cir. 2004) (internal quotations, citation omitted).

The Court concludes that the requested relief is narrowly tailored and concretely described such that it will only restrain violations of 18 U.S.C. § 2511(1)(a). The following relief is warranted:

> Defendant and anyone acting in active concert or participation with, or at the direction or control of Defendant, is hereby permanently enjoined from:
>
> > (A) circumventing or assisting others in circumventing DISH Network's security system, or otherwise intercepting or assisting others in intercepting DISH Networks's satellite signal;
> >
> > (B) testing, analyzing, reverse engineering, manipulating, or otherwise extracting codes, data, or information from DISH Network's satellite

1   receivers, smart cards, satellite data stream, or any other part or

2   component of the DISH Network security system.

3   (Proposed Order at 4; Mem. at 9.)

4   Accordingly, Plaintiffs' request for a permanent injunction is **GRANTED**.

5   **2. STATUTORY DAMAGE AWARD**

6   Plaintiffs request a statutory damage award of $10,000 pursuant to 18 U.S.C. §

7   2520(c)(2) for violating 18 U.S.C. § 2511(1)(a). (Mem. at 3–6; Supp. Mem. at 4–7;

8   Proposed Order ¶ 4.) As discussed above, this is an appropriate remedy because, as

9   Plaintiffs have demonstrated, Defendant violated 18 U.S.C. § 2511(1)(a). The amount

10  requested is also reasonable, and as Plaintiffs have noted, many courts have upheld

11  similar awards. DirecTV, Inc. v. Grosman, No. 03-04176 CW, 2005 WL 1230791, at

12  *`–1 (N.D. Cal. May 19, 2005); DirecTV, Inc. v. Turnbough, No. 2:04-cv-2409-GEB-

13  GGH, 2006 WL 3007549, at *2 (E.D. Cal. Jan. 20, 2006); (see also Mem. at 5–6

14  (collecting cases); Supp. Mem. at 6 (same).) The Court agrees that such an award is

15  warranted. Accordingly, Plaintiffs are **GRANTED** a statutory award of **$10,000**.

16  **3. ATTORNEY'S FEES**

17  Pursuant to 18 U.S.C. § 2520(b)(3), Plaintiffs are entitled to reasonable attorney's

18  fees and costs. Here, Plaintiffs only seek attorney's fees pursuant to Local Rule 55-3.

19  C.D. Cal. R. 55-3; (Mem. at 10; Supp. Mem. at 6 n.3 ; Proposed Order at 4.) Local Rule

20  55-3 provides a schedule to determine the amount of reasonable attorney's fees to be

21  awarded if an applicable statute provides for recovery of fees and costs. C.D. Cal. R. 55-

22  3. Pursuant to this rule, if the amount of the judgment is $10,000, the amount of

23  attorney's fees is "$300 plus 10% of the amount over $1,000." Id. Applying the Local

24  Rule 55-3 formula, Plaintiffs are entitled to their requested sum of **$1,200.00**.

25  //

26  //

27  //

28  //

# IV.  CONCLUSION

Consistent with the reasoning above, Plaintiffs' motion for default judgment is **GRANTED.**  Plaintiffs are **GRANTED $10,000** in statutory damages, **$1,200** in attorney's fees, and a permanent injunction, as discussed above.  Plaintiffs' first and second counts are **DISMISSED with prejudice**.  The hearing presently scheduled for Monday, February 13, 2012, is hereby **VACATED**.


**IT IS SO ORDERED.**


DATED: February 9, 2012

_____
Judge Gary Allen Feess
United States District Court